Benjamin Crawford et al., Respondents, *v.* Edward Nilan, Appellant.

Argued October 30, 1942; decided January 14, 1943.

*Elbert N. Oakes* and *Lawrence H. Cooke* for appellant. As a matter of law the operation of defendant's automobile at the time

and place of the accident was unlawful and without his permission. (*Der Ohannessian* v. *Elliott*, 233 N. Y. 326; *Fluegel* v. *Coudert*, 244 N. Y. 393; *Atwater* v. *Lober*, 133 Misc. 652; *Houlihan* v. *Selengut*, 175 Misc. 854; *Chaika* v. *Vandenberg*, 252 N. Y. 101; *Potts* v. *Pardee*, 220 N. Y. 431; *St. Andrassy* v. *Mooney*, 262 N. Y. 368; *Hull* v. *Littauer*, 162 N. Y. 569; *Fallon* v. *Swackhamer*, 226 N. Y. 444; *Rose* v. *Balfe*, 223 N. Y. 481.) Testimony of a passenger in defendant's car was erroneously received. (*Queen* v. *Hepburn*, 7 Cranch. 535; *Matter of Carroll* v. *Knickerbocker Ice Co.*, 218 N. Y. 435; *Woodgate* v. *Fleet*, 44 N. Y. 1; *Gunter* v. *Gunter*, 174 Fed. 933; *Taylor* v. *Commercial Bank*, 174 N. Y. 181; *Luby* v. *H. R. R. R. Co.*, 17 N. Y. 131; *Ives* v. *Ellis*, 169 N. Y. 85; *McIlhargy* v. *Chambers*, 117 N. Y. 532; *Twaddell* v. *Weidler*, 109 App. Div. 444; 186 N. Y. 601; *Allen-Kingston Motor Car Co.* v. *Consolidated Nat. Bank*, 145 App. Div. 295.)

*Seymour L. Colin, Ellsworth Baker* and *George A. Grabow* for respondents. The defendant's testimony concerning the alleged restrictive instructions to his chauffeur, which was uncorroborated and contradicted by his testimony in an examination before trial was insufficient conclusively to rebut the statutory presumption of consent arising under section 59 of the Vehicle and Traffic Law (Cons. Laws, ch. 71). The defendant's credibility was exclusively for the jury and they had a right to reject this testimony. (*Piwowarski* v. *Cornwell*, 273 N. Y. 226; *Jorgensen* v. *Jaeger*, 257 N. Y. 171; *Lee* v. *City Brewing Corp.*, 279 N. Y. 380; *Thomas* v. *City of New York*, 285 N. Y. 496; *Christie* v. *Vineburg, Inc.*, 259 App. Div. 342; *Hartstein* v. *U. S. Trucking Corp.*, 260 App. Div. 643.) Assuming that the defendant gave the alleged instructions concerning the servicing of his car, nevertheless a question of fact remained as to whether the chauffeur had permission to use the automobile at the time and place of the accident and the evidence authorized a finding by the jury that he did. (*Townsend* v. *Bell*, 167 N. Y. 462; *Bernstein* v. *Kritzer*, 253 N. Y. 410; *Frank* v. *Von Bayer*, 236 N. Y. 473; *Ga Nun* v. *Palmer*, 216 N. Y. 603; *Hirsch* v. *Jones*, 191 N. Y. 195; *Foltis, Inc.*, v. *City of New York*, 287 N. Y. 108; *Faber* v. *City of New York*, 213 N. Y. 411; *Pierce* v. *Atlantic G & P Co.*, 216 N. Y. 209; *Dulberg* v. *Equitable Life Assur. Co.*,

277 N. Y. 17; *Matter of Kelly*, 285 N. Y. 139.) There was no error committed during the cross-examination of the passenger witness. The rule against hearsay had no application to the question addressed to such witness nor to his answer. (*Whitney* v. *Supreme Commandery*, 30 App. Div. 397; *Webb* v. *Yonkers R. R. Co.*, 51 App. Div. 194; *Matter of Woodward*, 69 App. Div. 286.) Even had the cross-examination gone so far as to seek to adduce the declarations of Smith as to the destination and purpose of the trip, such testimony would have been admissible. (*Cutter* v. *Maxweld Corp.*, 281 N. Y. 467; *Cammarata* v. *Nassau Appliance Co.*, 282 N. Y. 795; *Cox Shoe Mfg. Co.* v. *Gorsline*, 63 App. Div. 517; *Hine* v. *N. Y. El. R. R. Co.*, 149 N. Y. 154; *Landon* v. *Preferred Acc. Ins. Co.*, 43 App. Div. 487; 167 N. Y. 577; *Brown* v. *Nassau Elec. R. R. Co.*, 213 App. Div. 834; *Sackheim* v. *Pigueron*, 215 N. Y. 62; *Jennings* v. *Okin*, 88 N. J. L. 659; *Smith* v. *Firestone Tire & Rubber Co.*, 119 Conn. 483; *Mathews* v. *Gt. Northern R. Co.*, 81 Minn. 363.)

CONWAY, J. On Sunday evening, June 16, 1940 a tragic accident occurred on a State highway at a point some three or four miles from the village of Ellenville, N. Y. The automobile in which three of the four plaintiffs and the intestate of the fourth were riding, while traveling on a down grade, came into collision with an automobile owned by the defendant and operated by one Woodrow Smith. Three of the plaintiffs were injured and the intestate of the fourth, the wife of the operator of the car, was killed. Smith was also killed by the collision.

The highway where the collision occurred was the most practicable route between Ellenville and Cragsmoor, N. Y., seven or eight miles east of Ellenville. At Cragsmoor a religious hall known as Vista Maria was maintained. The defendant is pastor of a church at Ellenville. Smith was a young man about twenty years of age who was employed part-time by the church as janitor and handyman. On the Sunday in question the defendant and his assistant planned to attend services at Poughkeepsie and it was necessary, therefore, to obtain the services of at least one substitute priest during their absence. For that purpose Smith was dispatched at about eleven o'clock in the forenoon to Villa Maria to obtain the attendance of the Rev. Paul Donovan, a man seventy-six years of age who had been retired from active duty. He arrived before the departure of the defendant for Poughkeepsie. The latter testified

that Smith was permitted to use defendant's car when given specific instructions as to its use; that the only instructions he gave to Smith were to bring Father Donovan to the rectory that morning and to have the defendant's automobile, a Buick, filled with gasoline, greased and washed so that it would be ready for use on the following day.

During the afternoon, Smith asked the housekeeper of defendant about the return of Father Donovan to Cragsmoor and was told that the defendant had directed her to drive him back. Smith then asked her if he might " get back here at five-thirty and wash the car and have the car greased and so on  \*  \*  \*." She told him that that would be satisfactory.

At about a quarter before six the housekeeper drove Father Donovan to Cragsmoor returning between six-fifteen and six-thirty. When she left, the Buick was standing between the rectory and the garage. When she returned it was no longer there. On the road which she traversed on her return journey, she did not meet Smith. Between fifteen and thirty minutes after her return she heard of the accident which had occurred on that same stretch of road. Father Donovan had been to Ellenville in the evening only once in the eighteen months preceding June 16, 1940 and on the evening of that day, after his return to Cragsmoor, had received no message requesting his return to Ellenville.

The issue the parties were litigating, therefore, was whether young Smith had departed from his instructions and was taking an automobile ride on his own without defendant's permission. The issue was a narrow one and closely contested. Plaintiffs had offered no proof up to that point in the trial on the question of permission but were relying on the presumption arising from the ownership of the automobile by defendant. (Vehicle and Traffic Law, § 59; Cons. Laws, ch. 71; *St. Andrassy* v. *Mooney*, 262 N. Y. 368.)

Smith, at the time of the accident, had been accompanied by three boys and the defendant desired to make proof of that fact. Counsel for the defendant requested plaintiffs' counsel to so concede but the request was denied. Thereupon defendant's counsel called for one of the boys, Walter Ignatik, to take the stand. There was no answer in the courtroom.

No doubt proof that Smith had been accompanied by three boys was considered by defendant to be helpful to him. It cannot be doubted that the witness was an important one as is evidenced by the following which occurred immediately after the witness' failure to respond when called to the witness stand: " Mr. Oakes: May it please the Court, I would like to ask counsel if Walter Ignatik is under their subpœna or under the subpœna of either of them, that he be produced. The Court: Has he been subpœnaed? Mr. Baker plaintiffs' counsel]: I decline to give counsel that information;] I think that is entirely within our province. They know his residence is Ellenville. The Court: You called him, Mr. Oakes? Mr. Oakes: Yes, I sent to his house, and his mother said he was here under subpœna. The Court: If we can give Mr. Oakes any information where he can get this witness, if he wants to call him — Mr. Baker: I think I can locate him for Mr. Oakes this afternoon so he can have him here tomorrow morning. The Court: Do you want him here tomorrow morning? Mr. Oakes: Yes, I want him here now, if I can get him, but if I cannot, tomorrow morning will have to do. The Court: Counsel for the plaintiff says that he will produce him here in the morning. If you can't produce him, Mr. Baker — if there is any doubt about it, we will have to subpœna him and get him here. Mr. Baker: Mr. Oakes, if you desire to examine him this afternoon, I think I can have him here in five minutes. Mr. Oakes: All right, that will be fine. The Court: Do you want the help of the sheriff's office? Mr. Baker: No, he is here in Monticello under subpœna."

Another witness was then called whose testimony covers twelve pages of the record and then the witness Ignatik was produced and gave testimony. He was called by the *defendant* and said that he and two other boys were in the Buick automobile with Smith at the time of the collision; that he had entered the car with the other two boys at the home of the grandmother of one of them. That was the extent of his examination by defendant. On cross-examination by *plaintiffs*, Ignatik was asked " Where were you going? " and he answered " We were going to get the priest up at Cragsmoor." The defendant's counsel then moved to strike out that answer upon the ground that " The witness' statement is a conclusion and hearsay." That motion was denied and an exception taken.

Pausing there for a moment and assuming, in view of the objection that it was hearsay, that that was what Woodrow Smith had told Ignatik, we think that the motion was properly denied. (*Cutter* v. *Maxweld Corp.*, 281 N. Y. 467; *Landon* v. *Preferred Accident Ins. Co.*, 43 App. Div. 487, affd., 167 N. Y. 577; *Jennings* v. *Okin*, 88 N. J. L. 659; *Smith* v. *Firestone Tire & Rubber Co.*, 119 Conn. 483, 490.)

On redirect examination *defendant's* counsel questioned Ignatik concerning a statement he had signed on the day following the accident. The witness admitted that he had read and signed a statement and that it had been a true statement when he signed it. In that statement the witness had said: " When he [Smith] picked us up he said he was going to Cragsmoor, but I didn't hear him give any reason for going." He was then questioned by *plaintiffs'* counsel and said that the answers contained in the statement were given orally, were written down by someone and that he had said to the one who wrote out the statement that he had been going to Cragsmoor to get the priest.

The presentation by the defendant of the subscribed statement to the witness was proper both at common law and by statute (Civ. Pr. Act, § 343a), since it was inconsistent with his testimony. Up to that point no error had been committed.

The *plaintiffs*, however, had obtained from the witness on the very morning of the day upon which he testified, a further statement which read in part as follows: " At that time Woody Smith, a friend of ours, and whom I knew was in the employ of St. Mary's Catholic Church of Ellenville, was driving a Buick automobile belonging to Father Nilan asked us whether we would care to accompany him in the Buick automobile to Cragsmoor where he was to pick up a priest and bring him back to Ellenville for the evening services."

Plaintiffs offered that in evidence and it was read over defendant's objection and exception. The reception of that statement was clearly error and in a case so close upon the facts we cannot say that it may not have been the determining factor with the jury in arriving at its substantial verdict.

The trial court set the verdict aside and said in a memorandum opinion that the erroneous admission of the statement offered by

plaintiffs was one of the reasons which impelled him so to do. The Appellate Division reversed his order and reinstated the verdict by a sharply divided court.

The error was that the statement obtained by plaintiffs was not at variance with the *testimony* of the witness but was merely inconsistent with a prior unsworn statement of the witness. It was not introduced in evidence on any claim that it was inconsistent with that testimony. It was offered and received because it was inconsistent with the written statement of the witness to which the defendant had properly called his attention. At the time the plaintiffs offered it, that was the only claim made by counsel as the following excerpt from the record indicates: " The Court: Now you are offering this. [Counsel for plaintiffs]: Yes, your Honor, *in connection with the statement offered by counsel for the defendant.* [Counsel for defendant]: I didn't offer any statement. [It had been read — not offered in evidence]. [Counsel for plaintiffs]: Well, you examined from it and got in part of it without offering the statement in evidence. *It is in answer to that."*

The testimony of an impeached or discredited witness may not be supported and bolstered by proving that he has made similar declarations out of court. While such a declaration was admissible under the earlier English cases *Lutterell* v. *Reynell*, 1 Mod. [1670] 282, that holding was later repudiated in *Rex* v. *Parker*, 3 Doug. [1783] 242 where BULLER, J. said: " it was now settled that what a witness said not upon oath would not be admitted to confirm what he said upon oath; and that the case of *Lutterell* v. *Reynell*, and the passage cited from Hawkins were not now law." Such a statement has not been admissible in this State, although there are earlier contrary decisions, (see 4 Wigmore on Evidence [3d ed.] § 1125 n. 1), since *Robb* v. *Hackley* (23 Wend. 50, in 1840) and the great weight of authority in this country supports our rule of exclusion. (*People* v. *Katz*, 209 N. Y. 311, 335, 341 and cases therein cited; *Ellicott* v. *Pearl*, 35 U. S. 412, 438; *Conrad* v. *Griffey*, 52 U. S. 480; *Burks* v. *State*, 78 Ark. 271; *Knight* v. *State*, 114 Ga. 48; *Chicago City Rwy. Co.* v. *Mathieson*, 212 Ill. 292; *State* v. *McDaniel*, 68 S. C. 304; *Legere* v. *State*, 111 Tenn. 368; *Reed* v. *Spaulding*, 42 N. H. 114.) There is a recognized exception to the rule where the testimony of a witness is assailed as a recent fabrication. Then his testimony " may be confirmed by proof of declarations of the same tenor before the

motive to falsify existed." (*Ferris* v. *Sterling*, 214 N. Y. 249;, 254 *People* v. *Katz, supra; People* v. *Edwards*, 282 N. Y. 413.) The exception is not here material. The offered statement was obtained on the very morning of the day of trial. As was said in *Ellicott* v. *Pearl* (Story, J.) (*supra*, p. 440), such subsequent declarations " would enable the witness at any time to control the effect of the former declarations, which he was conscious, that he had made, and which he might now have a motive to qualify, or weaken, or destroy." The rule was there stated succinctly as follows: " Where parol proof has been offered against the testimony of a witness under oath, in order to impeach his veracity, establishing that he has given a different account at another time, we are of opinion that, in general, evidence is not admissible, in order to confirm his testimony, to prove that at other times he has given the same account as he has under oath; for it is but his mere declaration of the fact; and that is not evidence. His testimony under oath is better evidence than his confirmatory declarations not under oath; and the repetition of his assertion does not carry his credibility further, if so far, as his oath." (*Ellicott* v. *Pearl, supra*, p. 439.)

We have developed the background against which the error must be viewed because the instant case well illustrates the soundness of the decisions requiring the exclusion of the offered declarations. If such were not the rule, litigations might well, on occasion, develop into contests between litigants as to which one could obtain the latest version of a witness. Success would come to him who obtained it even though he had to keep the witness incommunicado, until rushed upon the witness-stand, for fear he might give a different and still later version, which he could make accord with the testimony he had then decided to give. " We have not in this state departed from that ancient and safe landmark in the law of evidence, which requires a witness in all cases to speak under the solemn sanction of an oath, and I am unwilling to peril the lives, the fame, or the property of individuals, by adopting the contrary doctrine." *Robb* v. *Hackley* (Bronson, J.), *supra*, 57.

The judgment of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.

Lehman, Ch. J., Loughran, Finch, Rippey, Lewis and Desmond, JJ., concur.

Judgment reversed, etc.