OPINION OF THE COURT
Kaye, J.
At issue on this appeal is the admission into evidence, on the People’s direct case, of the complaining witness’s account of a description of her assailant given to the police shortly after she was raped. Defendant contends that this testimony was inadmissible hearsay, as well as impermissible bolstering of the complainant’s in-court testimony through introduction *489 of a prior consistent statement. For the reasons that follow, we conclude that the challenged testimony was properly admitted for a nonhearsay purpose.
According to her testimony, the complainant encountered defendant at about 11:15 p.m. on March 27, 1986, as she was walking home from her sister-in-law’s house in Brooklyn. She first saw defendant standing on the sidewalk when she reached the corner of Willoughby and Tompkins Avenues and, after she turned the corner onto Willoughby, she noticed that defendant was walking parallel to her on the opposite side of the street. Defendant then crossed the street and walked directly toward her with his hand in his pocket. When they were face-to-face under a streetlight, defendant drew a gun from his pocket, and pushed it into her side. She described the illumination provided by the streetlights during this time as "bright” or "decent.”
Pleading with defendant not to hurt her, the complainant asked, "Why are you doing this to me? Who are you? What have I done?” Defendant responded that he would kill her unless she "shut up” and pushed her forcibly to a dark tunnel-like overhang attached to a school building. There, he tore her T-shirt and touched her "all over.” In answer to defendant’s demand for money or jewelry, she offered him her silver bracelets, but defendant did not take them.
Instead defendant pushed her out from the overhang, where she had been unable to see him, to the back of the school playground. Although she characterized the light in the playground as dim, she testified that she was only a few inches from defendant and able to perceive his features. Forcing her to lie on her back on some playground equipment, defendant had her undress and raped her.
When someone approached through the playground, defendant ordered her not to scream, and he dressed and fled. The complainant herself dressed and ran from the playground in a different direction. Within a few blocks, at approximately midnight, she encountered three police officers to whom she reported that she had been raped. The officers drove her around the area of the school, but they did not find her assailant. She was then taken to Woodhull Hospital, where a physical examination was performed; testing of slides taken during this examination revealed the presence of spermatozoa. At the hospital, she provided a description of her assailant to the police officers. That account is the focus of the present appeal.
*490 Defendant was not arrested until April 8, 1986 — 12 days after the rape. That evening, the complainant saw defendant leave a house near the corner of Willoughby and Tompkins Avenues, and enter a pool hall. She found a nearby police officer, who arrested defendant after she reported that she had just seen the man who had raped her 12 days earlier.
Before trial, defense counsel made a motion for a prospective ruling concerning the testimony to be given by the complainant and the police officer witnesses. Specifically, counsel requested that neither the complainant nor the officers be permitted to testify that she had identified defendant to the police, and that the police officers be prohibited from testifying that they had arrested defendant as the result of a conversation with the complainant. In addition — the basis of defendant’s claim on this appeal — counsel argued that the complainant should not be allowed to testify that she had given any description of defendant to police. Counsel contended that such testimony would constitute "bolstering, plain and simple.”
The prosecutor agreed that there would be no police testimony concerning what the complainant had said to the police witnesses. She argued, however, that it was proper for the complainant herself to testify that when she had spotted defendant on the street 12 days after the rape, she had gone to the police and told them. The court agreed with the People on this point, and defendant makes no appellate claim about the propriety of that testimony.
As to the complainant’s testimony about the description she gave to the police immediately after the rape, the prosecutor urged that it would be admissible because it bore upon the accuracy and reliability of the identification of defendant, and was a factor mentioned in the standard charge on identification in a one-witness identification case. The court ruled that such testimony was admissible, and at trial — over defendant’s objection — the complainant testified on direct examination that she had described her assailant to the police that night and gave the details of her description.
Defendant did not take the stand, but his girlfriend testified on his behalf that on the date of the rape, defendant — unlike the rapist, as the complainant described him — had a noticeable moustache and goatee and fairly full hair, which she trimmed just before he was arrested. Based on this testimony, and on his cross-examination of the complainant, counsel *491 argued in summation (as he had in opening) that the identification of defendant as the rapist was mistaken. In particular, counsel contended that the complainant had only "a matter of seconds” to observe her attacker’s features during the incident, under poor lighting conditions, and that the stress of the event had undermined her "ability to recall and to really get a picture in [her] mind of what the person who did this to [her] looked like.” Counsel argued that although the complainant had later convinced herself that defendant was the rapist, her certainty that she had correctly identified defendant only cast doubt on her reliability as a witness, given that she could not have formed an accurate mental impression of defendant during the crime. Counsel urged that the in-court identification was merely "ceremonial.”
In a precharge conference at the close of all the evidence, defense counsel requested that the court give "an identification charge as in the C.J.I.” The court granted that request, and gave the jury the pattern charge on the evaluation of identification evidence in a one-witness case, including the section intended for use where the trial evidence includes testimony of a description given by the witness to the police, as follows: "In evaluating the witness’s capacity to observe and remember, you may consider the 'description’ of the perpetrator which he gave to the police soon after the commission of the crime. If that 'description’ does not match the physical characteristics of the defendant, that factor must be considered by you in making your determination of the witness’s capacity and ability to observe and remember the physical features of the perpetrator. On the other hand, an accurate matching 'description’ may be considered by you in assessing the witness’s capacity to observe and remember.” (1 CJI[NY] § 10.01, at 586.)
Although counsel had not earlier requested that this portion of the C.J.I. instruction be omitted, following the charge he objected to its inclusion, on the ground that it was error for the court to tell the jurors that they were to consider the description at all, because it had been error to admit it in the first instance. The court denied his request for a curative instruction to that effect.
We now affirm the Appellate Division order that upheld defendant’s conviction.
Hearsay is a statement "not made in the course of the trial in which it is offered * * * if it is offered for the truth of the *492 fact asserted in the statement” (Richardson, Evidence § 200 [Prince 10th ed]). There is no dispute that the description the complainant gave to the police of her rapist was made out of court. Thus, it was inadmissible unless it was not offered for the truth of the facts asserted in the statement, or unless it fell within an exception to the prohibition against hearsay testimony.
The complainant’s testimony, according to the People, was not offered to prove the truth of the description she gave to the police. Rather, the description was probative of her ability to observe and remember her assailant, and thus relevant to the accuracy of the identification she made. Indeed, that ground for admission was argued by the prosecutor in response to counsel’s pretrial motion to preclude description testimony. The prosecutor urged that the testimony bore upon the complainant’s reliability and accuracy, and referred to the C.J.I. identification instruction, which charges the jury to consider description testimony for that very purpose.
According to defendant, the People’s theory at best lacks substance, as the mere fact that the complainant was capable of describing the perpetrator in some detail after the crime proves nothing about her ability to observe and remember unless it is assumed that the description is true. While a detailed description would not, in itself, prove that the witness was able to observe accurately, the fact that such a description was given would tend to demonstrate that the particular conditions at least allowed the witness to make observations, whether accurate or not. That alone might be of sufficient probative value to warrant admission of the details of the description.
As charged to the jury, the relevance of the complainant’s description testimony was also based on the fact that the jurors could compare it to the physical characteristics of the defendant. This was a factor to be considered by the jury in assessing the witness’s ability to observe and remember the features of the perpetrator. Thus, defendant misconstrues the purpose of the description testimony here. It is not the accuracy or truth of the description that establishes its relevance. It is, rather, the comparison of the prior description and the features of the person later identified by the witness as the perpetrator that is the ground of relevance.
In a case — like this one — where identification is the only contested issue, the question whether the complainant was *493 mistaken in identifying the defendant as the person perceived during the commission of the crime must be resolved by the jury. Comparison of the verbal description — made on the basis of recollection alone, close to the time of the crime — with the actual features of the person later corporeally identified can assist the jury in evaluating the degree to which the later physical identification may or may not have been the product of intervening memory failure or suggestion. Stated conversely, it is evidence of the victim’s mental ability to transfer accurately the mental images made during the commission of the crime to the time and place of the corporeal identification.
In fact, defense counsel made precisely this argument in summation. He described in detail each discrepancy between the complainant’s description and defendant’s appearance, suggesting to the jury that those differences "should raise substantial doubts in [their] mind as to the reliability of her identification testimony” as they allegedly demonstrated "a lack of ability on her part to relate to you a clear and consistent picture.”
Accordingly, the probative force of the complainant’s description evidence is not based on an assumption that the prior description is or is not true, nor does the comparison conclusively establish the identification as accurate or inaccurate. It is, however, evidence that assists the jury in evaluating the witness’s opportunity to observe at the time of the crime, and the reliability of her memory at the time of the corporeal identification — both important aspects of the critical issue. Thus, the description testimony was properly admitted for this nonhearsay purpose and, that being so, defendant’s contention that it was inadmissible as a prior consistent statement is irrelevant.
Nor are we persuaded by defendant’s contention that the fact that a statutory exception to the hearsay rule was required in order to permit a witness to testify to a prior identification proves that a witness’s testimony concerning a prior description must "a fortiori” be inadmissible, as it is beyond the scope of the exception.
As defendant notes, CPL 60.25 and 60.30 permit a witness who has previously identified the defendant under constitutionally unexceptionable circumstances to testify to the earlier identification, in addition to making an in-court identification; those statutory exceptions are in derogation of the common-law prohibition against hearsay testimony, which had been *494 held to bar the prior identification testimony. (See, People v Trowbridge, 305 NY 471, 475.) On their face, CPL 60.25 and 60.30 render admissible only testimony concerning a previous corporeal identification. Defendant reasons that the legislative creation of this narrow exception suggests that as a policy matter, related or similar testimony, such as the description testimony given in this case, must be deemed inadmissible.
CPL 60.25 and 60.30, in substance part of the law of this State for more than 60 years, allow prior identification testimony not merely as corroboration of an in-court identification, but as independent evidence of identity, so long as the identifying witness was available at trial for cross-examination. The drafters noted that the amendment was necessary "to aid the administration of justice and do away with what at best seems a technical interpretation of the law” (Report of Crime Commission, 1927 NY Legis Doc No. 94, at 67).
Indeed, the technical application of the hearsay rule barring a witness’s testimony concerning a prior identification had been widely criticized. A formal in-court identification, often long after the crime and following arrest and judicial proceedings, was predictable and thus of inconclusive value. By contrast, there seemed to be greater value in evidence that the witness had made an identification soon after the event, "at a former time, when the suggestions of others could not have intervened to create a fancied recognition in the witness’ mind,” and the rejection of such evidence by some courts on hearsay grounds was described as "a telling illustration of the power of a technical rule of thumb to paralyze the judicial nerves of natural reasoning” (4 Wigmore, Evidence § 1130 [Chadbourn rev 1972]).
We do not consider the admissibility of description testimony for its truth. We note, however, that the background of CPL 60.25 and 60.30 indicates that the Legislature intended by adoption of those statutory "exceptions” only to eliminate a technical bar to the receipt of probative evidence of identification, not to preclude all use of similar testimony. Thus, we are not persuaded that the existence of a statute for related testimony, standing alone, necessarily forecloses even the nonhearsay use of description testimony.
Finally, defendant’s other claims of trial error are without merit. The court’s interested witness charge was balanced and did not suggest that any particular witness was or was not an "interested” witness (People v Agosto, 73 NY2d 963, 967). *495 Contrary to defendant’s contention, the court’s rulings did not deprive him of an opportunity to present to the jury his theory that the complainant’s in-court identification of defendant was unreliable.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed.