■ The People of the State of New York, Respondent, v Danny Perez, Appellant. The People of the State of New York, Respondent, v Pablo Garcia, Appellant.—Judgments, Supreme Court, Bronx County (Alvin Schlesinger, J.), rendered on or about April 14, 1982, convicting defendants of murder in the second degree and sentencing them to indeter-

minate terms of imprisonment of from 22 years to life, unanimously affirmed.

Defendants Perez and Garcia and another, Jose Aviles, were charged with shooting Pedro Nieves to death. At the identification hearing, defendant Perez orally moved for inspection of the Grand Jury minutes after one of the detectives involved in the case testified on cross-examination that the transcript of the Grand Jury minutes was in error. The detective said that he had not testified in the Grand Jury that he had shown a photographic array to Nieves' girlfriend. Counsel's request to have the court inspect the minutes to determine whether any testimony linked him to the crime was denied as untimely.

At the trial that immediately followed, the girlfriend identified the defendants and Aviles as the victim's assassins. Another witness crossed paths with defendants and Aviles near the scene, moments before the shooting. The girlfriend's two sisters testified that Perez and the victim argued earlier in the evening.

Perez's lone point on appeal is that a reversal of his conviction is in order because the trial court failed to reach the merits of his motion to dismiss. He does not seek a hearing. Without deciding whether the motion was procedurally defective (CPL 210.45 [1]; cf., *People v Jennings*, 69 NY2d 103), we find that Perez's claim is not reviewable. A motion to inspect, wrongly rejected as untimely under CPL 255.20 (3), like one wrongly decided on the merits, is beyond the reach of this court on appeal from a judgment based on legally sufficient trial evidence. (CPL 210.30.) The evidence against Perez is sufficient. Eyewitness testimony connected him to the crime. The criminal justice system has not been impaired because the prosecution of this case was allowed to go forward after the court's ruling. *(Cf., People v Alexander*, 136 AD2d 332, 337, citing *People v Pelchat*, 62 NY2d 97, 108.)

Nor is Garcia entitled to a reversal because of prosecutorial misconduct. The testimony of the victim's girlfriend was not impermissibly bolstered because the trial prosecutor repeatedly sought to introduce evidence that she named and described the killers to the police. The court's rulings in that regard were a windfall for the defense. *(Cf., People v Huertas*, 75 NY2d 487.) Moreover, since the extent of the girlfriend's familiarity with Garcia and her basis to make an identification were challenged, her testimony that she knew his family was relevant. Further, we find no bolstering in the prosecutor's redirect examination of the first officer to arrive on the scene. Objections blocked any potential inadmissible hearsay,

and the court gave curative instructions. Nor was Garcia deprived of a fair trial because of the prosecutor's zeal. He did test the court's patience from time to time and objected "like a firecracker." However, we find the tenor of this trial wholly different from the one in *People v Alicea* (37 NY2d 601). We do not condone the prosecutor's asides, but his loud tone and frequent objections were not mean spirited or inimical to the defendants' right to a fair trial. The court kept a tight rein on the proceedings by giving the jury timely instructions when the need to do so was perceived, and while the prosecutor was often insistent, he never lacked respect for the court itself. The court plainly had the upper hand in dealing with the prosecutor. By way of example, after the prosecutor had the victim's aunt point out the victim's mother in the courtroom, the testimony was not only stricken and the jury reminded of its obligation to decide the case without sympathy, but the prosecutor was upbraided.

Further, Garcia was not prejudiced by the prosecutor's summation. He mused whether the case involved an assassination or a murder, and described the victim's body as "swiss cheese", but these remarks, most certainly poignant and graphic, added little to the stark facts and were not prejudicial. *(See, People v Brosnan,* 32 NY2d 254, 262.) The evidence did show that the victim suffered 18 bullet wounds. Finally, we find that the prosecutor's use of the term "smokescreen" to describe some of defense counsel's arguments does not constitute reversible error because of the court's timely intervention and the failure of counsel to seek further relief.

Garcia's complaint that an audio tape of the gunshots and screams was inadmissible has not been preserved. Aviles' counsel objected to the tape, but Garcia's counsel did not, and then pointed to it as the best evidence of the sequence of the shots. We also find no merit to Garcia's claim that the trial court abused its discretion in imposing the sentence it did. Concur—Sullivan, J. P., Ross, Carro, Milonas and Rosenberger.