86 N.Y.2d 501 (1995)
658 N.E.2d 192
634 N.Y.S.2d 415
The People of the State of New York, Respondent,
v.
Willie Buie, Appellant.
Court of Appeals of the State of New York.
Argued September 13, 1995.
Decided October 26, 1995.
Edward J. Nowak, Public Defender of Monroe County, Rochester (Stephanie Batcheller of counsel), for appellant.
Howard R. Relin, District Attorney of Monroe County, Rochester (Robert Mastrocola of counsel), for respondent.
Judges TITONE, SMITH and LEVINE concur with Judge BELLACOSA; Judge SIMONS concurs in result in a separate opinion in which Chief Judge KAYE and Judge CIPARICK concur.
*503 BELLACOSA, J.
Defendant appeals by leave of a Judge of this Court from an order affirming his conviction, after a jury trial, of burglary and related offenses. The evidentiary law question is whether the admission of a 911 tape under New York's present sense impression hearsay exception, where the declarant was available and testified at trial, improperly "bolstered" that victim-witness's testimony. We hold first that the declarant's availability at trial does not preclude the admissibility of the tape under that hearsay exception (see, People v Brown, 80 N.Y.2d 729) and that its admission did not constitute improper bolstering in this case.

I.
This case arises out of a break-in at a private home in Rochester in the early morning hours of April 18, 1992. The sound of breaking glass awakened the homeowner, who immediately dialed 911 on his cellular telephone and described the unfolding events to the operator. Under standard practice, the call was recorded and preserved, and the integrity of the tape is not in issue.
While speaking to the operator, the owner left his house *504 and saw a figure also departing and carrying the owner's black briefcase, which contained his camera equipment, all of which had been inside the house moments earlier. The owner described the burglar's features with great particularity. He added that the perpetrator was wearing dark gray or dark green, midlength, solid-colored, baggy shorts, a white T-shirt, white socks, and white sneakers. This description essentially matched that of the defendant at the time of his arrest, shortly after the break-in.
After leaving the house, the burglar was followed by the owner, who kept talking on his cellular telephone. The burglar got to the main road and then began to run. The owner briefly lost sight of him, but spotted the black briefcase a short distance down the road, next to a driveway leading to a neighbor's open garage. At that point, two police officers arrived and quickly found the perpetrator lying down in a car inside the neighbor's garage. He was perspiring and his T-shirt was bloody. The owner identified him to the police as the man who had broken into his home. The police investigation noted a broken window at the owner's home, and a stain taken from the wall next to that window tested positive for human blood.
At trial, when asked to identify the person who broke into his home, the owner inexplicably did not point to the defendant, but instead identified the deputy sitting next to the defendant. The trial court allowed the victim to testify about his prior identification of the defendant to the police, both before and after the in-court misidentification. That is not in issue here. The court also precluded the police officers from referring to the victim's prior identification at the scene, and that is also not in issue. Both arresting officers testified that they arrested the defendant in the garage in the presence of the owner and that is the subject of an unpreserved Trowbridge-type bolstering claim (People v Trowbridge, 305 N.Y. 471; see also, CPL 60.25, 60.30).
The essence of the controversy before us revolves around the trial court's admission, over a defense objection, of the four-minute tape of the burglary victim's conversation with the 911 operator. The tape ended shortly before the events that took place at the neighbor's garage when the police arrived. In a pretrial ruling, the court stated that it would allow the evidence in under the present sense impression exception to the hearsay rule. At trial, the evidence was not *505 objected to as such, but rather, defendant's objection was based on the availability of the witness to testify and a claimed impermissible "bolstering" of the witness through the use of his prior, consistent, recorded statement. Defendant was convicted on all counts.
The Appellate Division unanimously affirmed, with two Justices concurring separately. The majority held that because the victim-witness was available, the confrontation concerns associated with unavailable witnesses were not implicated. Rather, though it found no error, it saw a potential problem in the bolstering of the victim's testimony by admitting a prior consistent recorded statement. The Court's view, with which we agree, was that the evidence was properly admitted because it "did more than mimic the in-court testimony of the owner" (201 AD2d 156, 160). It stated that the tape "gave the jury a temporal and auditory sense of the events" and, thus, "should not be viewed in the same light as a prior consistent written statement" (id.). The two concurring Justices stated that because the witness was available, there was no "pressing need" for the evidence and it should not have been admitted (id., at 163). They further stated that in all cases, the present sense impression exception should be employed only when the declarant is unavailable. The concurring Justices joined the Court to affirm, however, on harmless error grounds.

II.
The 911 tape is hearsay, as an out-of-court statement admitted for the truth of the matter asserted (see, People v Caviness, 38 N.Y.2d 227, 230; Prince, Richardson on Evidence § 8-101, at 497 [Farrell 11th ed 1995]). The purpose of presenting the tape to the jury was to prove the unfolding events described in the burglary victim's contemporaneously recorded narrative.
This Court recently adopted the present sense impression exception to the rule against hearsay as the law in New York (People v Brown, 80 N.Y.2d 729, supra). Brown presented a similar situation with a different twist, in that the evidence at issue there was a 911 tape of a bystander's description of the perpetrators of a burglary where the declarant was not fully identified and, therefore, not present or available to testify. In holding that the admission of the tape was proper, the Court added that "spontaneous descriptions of events made substantially contemporaneously with the observations are admissible if the descriptions are sufficiently corroborated by other evidence" *506 (id., at 734). The corroboration aspect is not in issue in this case.
We left open in Brown, however, the question of whether a declarant must be unavailable before present sense impression evidence is admissible. Defendant in this case argues that dictum in a footnote in Brown signalled this Court's preference for an unavailability requirement and, in any event, such a threshold is necessary to ensure the evidence's trustworthiness (People v Brown, supra, at 732, n 1).
We hold that the present sense impression exception does not require a showing of the declarant's unavailability as a sine qua non to admissibility, though that factor may be weighed by Trial Judges in assessing the traditional probativeness versus undue prejudice calculus for allowing evidence before a petit jury.
A fundamental precept of the law of hearsay is that certain exceptions require that the proponent of the evidence prove the declarant's unavailability as a witness at trial, while other exceptions treat availability as immaterial (4 Weinstein and Berger, Weinstein's Evidence ¶ 804 [a] [01], at 804-40  804-41 [1995]; 2 McCormick, Evidence § 253, at 130 [4th ed 1992]; Proposed NY Code of Evidence §§ 803, 804 [1980, 1982, 1991]). For example, unavailability is not required for certain exceptions, such as the business records exception (see, CPLR 4518; Meiselman v Crown Hgts. Hosp., 285 N.Y. 389, 396-397; People v Klein, 105 AD2d 805, 806, affd 65 N.Y.2d 613), the excited utterance exception (see, People v Caviness, 38 N.Y.2d 227, 232, supra; Fisch, New York Evidence § 1000, at 577 [2d ed 1977]), and the exception for official entries (see, CPLR 4520; Fisch, op. cit., § 953, at 550). On the other hand, a declarant's unavailability is a prerequisite to the admission of statements under several other hearsay exceptions, including the declaration against penal interest (see, People v Thomas, 68 N.Y.2d 194, 197; People v Settles, 46 N.Y.2d 154, 167; People v Brown, 26 N.Y.2d 88, 91), the exception for former testimony (see, CPL 670.10; People v Ayala, 75 N.Y.2d 422, 428, rearg denied 76 N.Y.2d 773; People v Arroyo, 54 N.Y.2d 567, 570, cert denied 456 US 979), and the exception for statements of pedigree and family history (see, Aalholm v People, 211 N.Y. 406, 412).
Neither this Court nor courts of other jurisdictions have fashioned a doctrinal distinction to classify which exceptions to the hearsay rule should require the declarant's unavailability as a condition for admissibility (4 Weinstein and Berger, *507 op. cit., ¶ 804 [a] [01], at 804-40  804-41; 2 McCormick, op. cit., § 253, at 130). Rather, that factor and the particular exceptions to which it adheres have developed on the typical case-by-case basis (2 McCormick, op. cit., § 253, at 130). The drafters of the Federal Rules of Evidence, for example, placed exceptions into the "unavailability-needed" category when, in their judgment, the character of the hearsay was not sufficiently or inherently trustworthy to otherwise receive the evidence (Advisory Comm Notes, Fed Rules Evid, rule 804; 4 Weinstein and Berger, op. cit., ¶ 804 [a] [01], at 804-40). As to the alternative "availability-immaterial" category, Professor McCormick suggests that some exceptions are placed into that grouping because those hearsay statements are by their nature at least as trustworthy as live testimony (2 McCormick, op. cit., § 253, at 130).
Virtually no jurisdiction imposes "unavailability" as an absolute prerequisite to admissibility of present sense impression evidence or its close cousin, the excited utterance (4 Weinstein and Berger, op. cit., ¶ 803 [1] [02], at 803-95  803-100; see, People v Brown, 80 N.Y.2d 729, 736, supra; see also, Note, The Present Sense Impression, 56 Tex L Rev 1053 [1978]; compare, People v Caviness, 38 N.Y.2d 227, 232, supra; Fisch, op. cit., § 1000, at 577). Moreover, the vast majority of States have adopted some version of rule 803 (1) of the Federal Rules of Evidence, the codification of the present sense impression, which does not require the declarant's unavailability (4 Weinstein and Berger, op. cit., ¶ 803 [1] [02], at 803-95  803-100). Finally, unavailability was never required at common law (2 McCormick, op. cit., § 271, at 211-213).
That array of authorities and our independent analysis convince us that there is no need in logic or in practical procedural protection terms to add this extra unavailability requirement on a per se basis to the opportunity to offer present sense impression evidence. Moreover, contrary to defendant's argument here, in Brown this Court simply noted the difference between the 1982 Proposed NY Code of Evidence and the Federal rule, not a preference for one over the other. While the proposed New York Code (1982) would have required the declarant's unavailability (People v Brown, 80 N.Y.2d 729, 732, n 1, supra), the 1980 proposed version would not have (Proposed NY Code of Evidence § 803 [1] [1980]). The 1991 version omitted this hearsay exception altogether, except to allow for a hybrid common-law development under the "residual," catch-all exception to the hearsay rule (see, Comment *508 of NY Law Rev Commn, reprinted in Proposed NY Code of Evidence § 806, at 241 [1991]). These unenacted, fluctuating formulations are of no value to assist in deciding anything at issue in this case.
Significantly, when this Court sought to guarantee the threshold trustworthiness of the exception by adding New York's unique version of a corroboration element (People v Brown, 80 N.Y.2d 729, 737, supra; see, Note, The Present Sense Impression, 56 Tex L Rev 1053, 1068-1074 [1978]; 2 McCormick, op. cit., § 271, at 214-215), it went beyond the Federal counterpart (Fed Rules Evid, rule 803 [1]). Analogizing to the excited utterance exception, however, the Court reasoned that without the extra assurance of reliability that excitement affords, courts should not admit present sense impressions unless some evidence exists, independent of the statement itself, tending to corroborate that the statement was made "spontaneous[ly] and * * * contemporaneously with the events described" (People v Brown, 80 N.Y.2d 729, 737, supra; compare, People v Brown, 70 N.Y.2d 513, 518; Fisch, op. cit., § 1000, at 576). This case incontrovertibly satisfies that aspect.
Having concluded that admission of a present sense impression does not require the declarant's unavailability, we note further that in this case the burglary victim's availability and testimony do not otherwise preclude the admissibility of the 911 tape. As it is undisputed that the 911 call in this case was contemporaneous with the victim's observations and independently corroborated by much other evidence and, thus, constituted a present sense impression, we conclude that the admission of the tape was also not otherwise error or an abuse of the trial court's discretion (see generally, Richardson, op. cit., § 1-304, at 17). Of course, trial courts may take into consideration a witness's availability or actual presence in court when balancing the probative value of present sense impression evidence against the potential for undue prejudice or jury confusion (People v Hudy, 73 N.Y.2d 40, 68 [Wachtler, Ch. J., dissenting]; People v Alvino, 71 N.Y.2d 233, 242; Richardson, op. cit., § 4-103, at 138).
Finally, the notion in this respect that the proponent of such evidence has an obligation to demonstrate some special "necessity" before probative evidence is deemed admissible finds no support in our evidentiary principles. The concurrence adverts to a statement in People v Brown, noting that if *509 an independent witness is "available to testify to the events, there is certainly no pressing need for the hearsay testimony" (80 N.Y.2d 729, 736, supra [emphasis added]). However, that statement merely explains our rejection in Brown of another proposed requirement, that present sense impression evidence be corroborated by an "equally percipient witness" (id.) That explanation in no way was intended to add another component to the opportunity to tender evidence under this newly adopted hearsay exception.
Rather, we wish to reinforce in the application of several evidentiary rubrics to this case that "[all] relevant evidence is admissible unless its admission violates some exclusionary rule" (People v Lewis, 69 N.Y.2d 321, 325; Richardson, op. cit., § 4-101, at 136). Neither Brown nor any other applicable authority requires a novel, threshold showing of "necessity" or "pressing need." As we have said strongly in another context, the People are "not bound to stop after presenting minimum evidence but could go on and present all the admissible evidence available to them" (People v Alvino, 71 N.Y.2d 233, 245, supra [emphasis added]). Then-Judge Fuld summed up an apt parallel guidepost in his concurrence in Fleury v Edwards (14 N.Y.2d 334, 341): "Absent some strong public policy or a clear act of pre-emption by the Legislature, rules of evidence should be fashioned to further, not frustrate, the truth-finding function of the courts in civil cases." This reasoning applies as well, within constitutional limits not applicable here, to criminal cases.

III.

A.
Defendant next argues that admitting the 911 tape in this case improperly "bolstered" the testimony of the victim witness by merely repeating a consistent version of his trial testimony. First of all, as the Appellate Division noted, the character of this evidence is different from typical prior consistent statement material and did far more than "mimic" the in-court recollective testimony. Also, because the 911 tape at issue is admissible under an independent hearsay exception, and because of this Court's well-established preference for cross-examination of hearsay declarants, we reject the bolstering concept as inapplicable in this case.
The term "bolstering" has doctrinally referred to two distinct *510 situations, both related to the rule against hearsay. First, in the context of eyewitness identification, the testimony of a third party (typically, a police officer) to the effect that the witness identified a defendant as the perpetrator on some prior occasion is generally inadmissible under the rule enunciated in People v Trowbridge (305 N.Y. 471, supra; see also, People v Holt, 67 N.Y.2d 819; People v Blue, 155 AD2d 472). The undeviating rationale behind this rule is that such identification evidence is hearsay, not falling within any exception (People v Trowbridge, supra, at 475; People v Jung Hing, 212 N.Y. 393, 401-404; Fisch, op. cit., § 492, at 326). The Legislature has since codified and modified the Trowbridge rule, allowing for some third-party testimony about a previous identification if a witness cannot at trial identify a defendant as the person who committed the crime (see, CPL 60.25; see also, CPL 60.30). That is not a problem in the case before us.
The second common use of the term "bolstering," and the one applicable here, refers to the fortification of a witness's testimony and credibility through the use of a prior consistent statement (People v McDaniel, 81 N.Y.2d 10, 16; Crawford v Nilan, 289 N.Y. 444, 450). Such evidence may be admissible, but only to rebut a claim of recent fabrication (People v McDaniel, supra, at 16; People v Davis, 44 N.Y.2d 269, 277). A prior consistent statement is admitted under these limited circumstances as an exception to the hearsay rule (see, People v Baker, 23 N.Y.2d 307, 323; People v Concepcion, 175 AD2d 324, 326, n, lv denied 78 N.Y.2d 1010; Richardson, op. cit., § 8-615, at 654; Martin, Prior Consistent Statements, NYLJ, June 10, 1994, at 3). Significantly, the prior consistent statement prohibition and exception are anchored to the impeachment and rehabilitation of witnesses (People v Davis, 44 N.Y.2d 269, 277, supra; Crawford v Nilan, supra, at 450).
This Court's cases discussing the admissibility of prior consistent statements have been uniformly concerned with the rehabilitation of witnesses through the use of statements that are otherwise clearly hearsay but which do not fall within any other exception. Categorically different from the present case, the typical situation involves a witness's statements to police after time for reflection or statements to close friends or relatives after the crime (see, People v McDaniel, 81 N.Y.2d 10, 19, supra; People v McClean, 69 N.Y.2d 426, 428; People v Davis, 44 N.Y.2d 269, supra; Crawford v Nilan, 289 N.Y. 444, 449, supra). If such statements are not offered in response to a claim of recent fabrication, they are generally inadmissible. *511 Even this Court's recent decision in People v Seit (86 N.Y.2d 92), which held that it was error to exclude evidence of a 911 call where the witness's testimony had been attacked as a recent fabrication, involved a pure hearsay statement falling only into the recent fabrication exception, and no other. If a proffered statement also meets the requirements to be admitted as an excited utterance, for example, its admission would be proper, notwithstanding the characterization as a prior consistent statement (see, People v Alberto, 144 AD2d 368; 2 Jones, Evidence § 10:19 at 299 [6th ed 1972] ["the rule * * * is( ) to exclude statements made by a witness which are consistent with his testimony unless they qualify for admission under some conventional hearsay exception" (emphasis added)]).
Thus, merely because a statement suffers some impediment under one hearsay exception does not preclude the proponent of the evidence from satisfying a court that a different, better-fitting exception fully applies. That is when the trial courts then exercise their evaluation of probativeness versus undue prejudice. Here, the 911 tape plainly did not qualify for admission under the prior consistent statement exception, as there was no charge of recent fabrication made. Indeed, it was not even offered on that basis. Nevertheless, because the evidence fulfilled all the requirements independently for the present sense impression exception, it was admissible (cf., Richardson, op. cit., § 8-615, at 654 [details of a prompt outcry rape complaint admissible if statement satisfies an independent hearsay exception]).
Our reasoning that the tape, admissible under the present sense impression exception, does not constitute improper "bolstering" parallels the logic underlying the availability-unavailability dichotomy. To exclude evidence admissible under a hearsay exception for which availability is immaterial, such as we are holding for the present sense impression type, merely because it might also be a prior consistent statement, would mean that the availability of the declarant does matter, especially if the witness also testifies. Such a contradiction would inherently clash with hearsay jurisprudence, which has recognized the distinctions between different types of hearsay exceptions and allows them to operate side-by-side, not mutually exclusively.

B.
The rule against hearsay developed at common law due to *512 an inherent suspicion of testimony that was not subject to cross-examination (2 McCormick, op. cit., § 245, at 95; Richardson, op. cit., § 8-102, at 498). In cases involving statements admitted pursuant to hearsay exceptions where the declarant has also testified in court, this Court has consistently not only permitted the use of the statements, but has also cited the declarant's presence on the witness stand as additional justification for the allowance because of the opportunity to verify and test the statements' trustworthiness (see, Matter of Danny R., 50 N.Y.2d 1026, 1028; People v Caviness, 38 N.Y.2d 227, 232, supra; Letendre v Hartford Acc. & Indem. Co., 21 N.Y.2d 518).
An example of the importance the Court attaches to the cross-examination of a hearsay declarant is People v Caviness (supra), in which the declarant herself, while on the witness stand as an eyewitness to a murder, testified that moments after the shooting, she exclaimed that "`Burnis shot Earl'" (38 N.Y.2d 227, 229, supra). The Court upheld this statement as an excited utterance and noted that "although not essential for admissibility, there was an added assurance of reliability since the proof of the declaration was by the [testimony of the] declarant who, in taking the stand, was subject to cross-examination" (id., at 232). The Court did not condemn the "availability" feature as bolstering or otherwise block its admissibility as unnecessary. Rather, we countenanced its use and upheld the admission of the evidence (see also, Meiselman v Crown Hgts. Hosp., 285 N.Y. 389, 396-397, supra; Klein v Benrubi, 60 AD2d 548).
Significantly also, in Matter of Danny R. (50 N.Y.2d 1026, 1028, supra), the Court held that a police officer's testimony that a robbery victim screamed, "`That's him'," when she saw the juvenile in police custody was admissible as an excited utterance notwithstanding the "antibolstering" rule of CPL 60.25 (see, People v Trowbridge, 305 N.Y. 471, supra). In Matter of Danny R., the victim testified and was subject to cross-examination. Though there was no indication that she was unable to identify her attackers in court, the Court still found the excited statement "properly admitted as a spontaneous declaration" (50 NY2d, at 1028, supra, citing People v Caviness, 38 N.Y.2d 227, supra). We specifically held that the rule of CPL 60.25 did not affect "the rule recognizing the admission of such evidence * * * as an exception to the hearsay rule" (Matter of Danny R., supra, at 1028).
In the present case, the witness who communicated the *513 prior statement by the 911 recorded telephone call also testified to the events surrounding the crime. He was vigorously cross-examined, including about his conversation with the 911 operator. Consequently, the admission of the tape is consistent with this Court's expressed preference for cross-examination, and it does not constitute, under the circumstances presented in this case, an impermissible bolstering that automatically blocks the use and utility of otherwise valid present sense impression evidence.
Our determination in this case is fortified by the powerfully probative nature of this evidence and its inherent individual integrity and reliability. The tape admitted at trial revealed the urgency  and effectiveness, with defendant's prompt apprehension and arrest  of the owner's call to 911. It gave the jury a chance to experience the crime as the events unfolded. Only a video recording of the crime in progress would be more reliable and more potent. We know of no evidentiary rule that would  or should  automatically preclude admission of such evidence (see, United States v Inadi, 475 US 387, 395-396; White v Illinois, 502 US 346).
Defendant's remaining claims have been considered and are likewise without merit.
Accordingly, the order of the Appellate Division should be affirmed.
SIMONS, J. (concurring).
The tape of the victim's 911 call was inadmissible hearsay and was improperly received to bolster his in-court testimony. Nevertheless, the error was harmless and I therefore vote to affirm.
This appeal stems from an incident which occurred when the defendant broke into the victim's house in the early morning hours. The homeowner was awakened by the sound of shattering glass and immediately phoned 911 to report the entry. He subsequently left the house and hid behind some bushes while he continued to report his observations to 911 on the portable phone. The burglar eventually emerged from the house carrying a briefcase and the victim followed him, while continuing his conversation with the 911 operator. The conversation, which lasted about four minutes, terminated before the police arrived and apprehended defendant. In a pretrial ruling, County Court held the 911 tape would be admissible at trial. After the victim had testified in full and recounted essentially the same facts recorded on the tape, the prosecution played the tape for the jury. A majority of the Appellate *514 Division and of this Court conclude this was not error. For several reasons, I disagree.
First, the 911 tape is not admissible in this case because it does not meet the standards for admissibility of evidence satisfying the present sense impression exception to the hearsay rule as stated in People v Brown (80 N.Y.2d 729).
In Brown 911 tapes were received to fill an evidentiary gap to explain why police officers were unable to locate suspects while investigating a burglary in progress. The source of the information was an anonymous 911 caller who was observing from his apartment the actions of the police as they searched for the defendant. The witness made two 911 calls, the first to report the crime and the second to tell the stumped police officers that the suspect they could not locate was hiding on the roof of the burglarized building.
In adopting the present sense impression exception, we held that spontaneous descriptions of events made substantially contemporaneously with the observations are admissible if independently corroborated. While the issue of corroboration was not raised during the pretrial hearing in this case, that circumstance does not justify a categorical rule for admissibility of 911 tapes. Such evidence is admissible only if the proponent demonstrates the evidence is reliable, i.e., the observations are "corroborated by other evidence" in the record (People v Brown, 80 NY2d, at 734, supra [emphasis added]). Here, the People did not make such a showing when arguing the admissibility of the 911 tape.
Moreover, while we have not held that the declarant must be unavailable before the present sense impression applies, there must be a need for the hearsay evidence. The tape was admitted as substantive evidence of material facts in Brown because those facts could not be proven by any other evidence. We implicitly recognized that necessity was the predicate for the admissibility of the evidence when we stated "[i]f [the] eyewitness is available to testify to the events, there is certainly no pressing need for the hearsay testimony" (People v Brown, 80 NY2d, at 736, supra; see also, id., at 732, n 1). That statement was consistent with the view that, at bottom, necessity is the reason for most hearsay exceptions (see, e.g., People v Liccione, 63 AD2d 305, 316, affd 50 N.Y.2d 850; People v Persico, 157 AD2d 339, 345; United States v Inadi, 457 US 387; see also, People v Jiminez, 102 AD2d 439, 442 [Alexander, J.]; Proposed NY Code of Evidence § 806 [iii]; Richardson, Evidence § 206 [Prince 10th ed]).
*515 The basis for the rule of necessity was discussed by the United States Supreme Court in United States v Inadi (475 US 387, 394, supra): "former testimony is only a weaker substitute for live testimony. It seldom has any independent evidentiary significance of its own, but is intended to replace live testimony. If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony * * * there is little justification for relying on the weaker version". Notwithstanding this statement of the general rule, the Supreme Court allowed the hearsay of a coconspirator in Inadi, finding that it was necessary to establish a conspiracy in progress, and because of the practical difficulties in securing forthcoming testimony from all the coconspirators. In the case before us, there was no similar need for the evidence in the 911 tape because the declarant testified and the four-minute conversation he had with the 911 operator did no more than duplicate his in-court testimony of the events before the police arrived (cf., People v Huertas, 75 N.Y.2d 487). Thus, although I agree that a 911 tape might be admissible as a present sense exception to the hearsay rule if the proponent establishes that the evidence is adequately corroborated and that there is some necessity for it, I cannot agree the 911 tape met those requirements on the record before us.
Moreover, because declarant testified in this case the evidence constituted improper bolstering.
Generally, all relevant, i.e., probative, evidence is admissible unless there is some legal reason to exclude it (see, People v Lewis, 69 N.Y.2d 321; Ando v Woodberry, 8 N.Y.2d 165). Even when hearsay evidence is found reliable, and therefore admissible under some exception to the general rule barring hearsay, it remains subject to the general rules of relevance. The evidence must not only have probative value but its probative value must outweigh the potential prejudice to the defendant resulting from its reception, and its admission must not violate some established policy against admissibility (see generally, Fisch, NY Evidence § 3, at 3-4 [2d ed]). Familiar illustrations are evidence of prior criminal acts, which although probative of material issues before the court, may be precluded because of the prejudice arising from it (see, People v Alvino, 71 N.Y.2d 233, 242; People v Lewis, supra, at 325; see also, People v Ventimiglia, 52 N.Y.2d 350, 360).
The 911 tape had the potential to prejudice defendant in *516 this case because it improperly bolstered the victim's testimony; it violated the rule which provides that if a witness has testified in person his or her testimony may not be supported by similar out-of-court statements (see, People v McDaniel, 81 N.Y.2d 10, 16; People v McClean, 69 N.Y.2d 426, 428).[*] Bolstering testimony is, by definition, relevant and probative, but it is customarily prohibited as a matter of policy because of its potential for prejudice, i.e., its tendency to support the testimony of the declarant and improperly enhance his or her credibility. It adds nothing to the proof but merely permits a witness to confirm, by unsworn statements, testimony given under oath.
The People's contention that the evidence should be admitted because it is reliable and persuasive is beside the point. Evidence is not admissible simply because it is reliable; it must also be relevant. Moreover, an audio tape is reliable only in the sense that it is a permanent record of what the witness previously said. While the tape of the complainant's 911 call may indeed be a reliable reproduction of what he saw and testified to in court, it is not necessarily an accurate statement of what happened. It suffers the same infirmities as the declarant's in-court testimony with respect to the witness' ability to perceive what happened and accurately restate it. It served only to enhance the victim's credibility by reenforcing his in-court testimony without adding additional probative evidence.
The Appellate Division majority cited People v Huertas (75 N.Y.2d 487, supra) to support its contention that the use of the 911 tape fell within an exception to the rule against bolstering. The statement in Huertas was not offered for the truth of the matters asserted and therefore was nonhearsay. It was received solely to establish, contrary to defendant Huertas' claims, that the complainant had a sufficient opportunity to view defendant and that there was some basis for her subsequent corporeal identification.
The People did not offer the 911 tape on Huertas grounds in this case nor, in fact, did they offer any reason other than the fact that the tape qualified as a present sense impression. It *517 was introduced to prove the facts contained in the recording but it did not include any additional description of the suspect not testified to by declarant, nor did it include the identification of the suspect at the time and place of the arrest. It was merely a repetition of the events from the break-in of declarant's apartment until he lost sight of the fleeing burglar. The declarant had already testified to those facts in full, however, and the tape improperly bolstered his in-court testimony.
The Appellate Division concluded the 911 evidence was even stronger than the typical out-of-court statement because it "vividly" portrayed the events (201 AD2d 156, 160). The majority finds it admissible because it gave the jury a chance to experience the crime "as the events unfolded" and because it was "potent" (majority opn, at 513). The People state that there was an element of "excitement" in the tape created by the victim's wavering voice and his repeated emotional appeals for the police to get there quickly. But these characteristics, none of which were offered below to support admission, merely confirm that the tape, made under the stress of the crime in progress, would allow jurors to empathize with the victim. That, however, only enhances the improper bolstering effect of this unsworn evidence. By dramatically duplicating the witness' in-court testimony without any necessity for doing so, the hearsay evidence repeated facts and circumstances which may or may not have been accurately perceived and did so in an emotional context which only echoed and reenforced declarant's trial testimony. The unsworn statements on the tape, by their emotional impact, made the declarant's in-court testimony stronger in the eyes of the jury  the essence of impermissible bolstering.
The cases cited by the majority do not support their result. In People v Caviness (38 N.Y.2d 227), the witness was permitted to testify about a statement she had made at the time of the crime as an excited utterance. Inasmuch as her statement qualified under that exception to the hearsay rule, she was allowed to testify to it. The statement was part of her direct testimony, it was not repetitive, bolstering evidence which reiterated her in-court testimony. In Matter of Danny R. (50 N.Y.2d 1026), the issue was whether the identification violated CPL 60.25. The Court decided it did not. There was no evidence in the record to establish whether the victim could or could not identify the juvenile at trial, and the common-law bolstering issue was apparently not presented to the court; at least it was not addressed in our opinion. Letendre v Hartford Acc. & Indemnity Co. (21 N.Y.2d 518) *518 permitted prior sworn statements of a faithless employee to be admitted in the employer's action to recover on a fidelity bond. The evidence did not constitute bolstering of in-court testimony, indeed it contradicted the employee's in-court testimony and was made necessary when the employee denied the peculations at trial.
Accordingly, I conclude that the 911 tape was improperly admitted into evidence and played for the jury. It did not qualify as an admissible exception to the hearsay rule under the present sense impression rule because it was not properly corroborated, and because its proponent did not establish the need for it. Moreover, admitting the tape permitted the in-court testimony of the declarant to be improperly bolstered.
Nevertheless, I conclude the error was harmless. The victim followed defendant from his burglarized home to the area of the garage in which he was found hiding shortly after the crime. When arrested, defendant was perspiring and had wet blood on his shirt, a significant fact because human blood was found at the point of the break-in. The victim's briefcase was found near the place of defendant's arrest. Defendant fit the description given by the victim and was identified by him at the time of the arrest. Under the circumstances, admission of the 911 tape was harmless (see, People v Crimmins, 36 N.Y.2d 230, 242).
Order affirmed.
NOTES
[*] A common exception arises when an opponent assails a witness' testimony as a recent fabrication. In such cases the party is entitled to offer evidence of prior consistent statements made before there existed any motive to lie (People v Seit, 86 N.Y.2d 92, 95; People v McDaniel, 81 N.Y.2d 10, supra; People v McClean, 69 N.Y.2d 426, supra).