**Victor ZARVELA, Petitioner–Appellant,**

**v.**

**Christopher ARTUZ, Superintendent of Greenhaven Correctional Facility, Respondent–Appellee.**

**No. 03–2710.**

United States Court of Appeals, Second Circuit.

Argued: March 30, 2004.

Decided: April 7, 2004.

**416**

Randall D. Unger, Bayside, NY, for Petitioner–Appellant.

Morgan J. Dennehy, Assistant District Attorney (Leonard Joblove, Assistant District Attorney, of counsel, Charles J. Hynes, Kings County District Attorney, on the brief), Office of the Kings County District Attorney, Brooklyn, NY, for Respondent–Appellee.

Before: FEINBERG, CABRANES, and POOLER, Circuit Judges.

PER CURIAM.

Petitioner was convicted in New York Supreme Court, Kings County, of second-degree murder and second-degree criminal possession of a weapon, based on his shooting of Tracie Hill. He appeals from the denial of his habeas petition by the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge* ).[1] Petitioner claims that his right to a fair trial was violated by (1) the state trial court's refusal to allow exculpatory hearsay testimony, and (2) the state trial court's jury instructions on reasonable doubt.[2]

The only eyewitness to the shooting who testified at trial was Juan Gonzalez.[3] Gonzalez testified that he and Hill sold crack cocaine at 364 Linden Street in Brooklyn, and that petitioner was one of their suppliers. Some time prior to the shooting, petitioner accused Gonzalez and Hill of diluting the crack and angering his cus-

tomers, and warned them that one of them was going to get hurt. On the evening of February 26, 1990, Gonzalez was sitting on the steps at 364 Linden Street, and Hill was selling crack a few feet away. A green Buick Electra stopped across the street, and petitioner got out. He and Hill had a dispute, and petitioner removed a handgun from a shirt pocket and shot Hill in the face. Gonzalez fled into 364 Linden Street.

Later that night, a police detective arrived at the scene and spoke to various witnesses, including Gonzalez. Gonzalez told the detective that a white male, whom he knew as "Steve," had shot Hill. However, two months later, Gonzalez called the detective and told him that petitioner, and not "Steve," had shot Hill. Gonzalez testified that he had initially misinformed the detective because he was frightened of petitioner, but that he eventually told the truth because he was concerned that petitioner was still free after killing Hill.

Lysbeth Moran testified for the defense that, on the evening of February 26, 1990, she was in her mother's apartment at 364 Linden Street when Gonzalez ran in. Petitioner sought to introduce further testimony that, when Moran asked what had happened, Gonzalez said that Hill had been shot; and when Moran asked who did it, Gonzalez said, "I don't know, some white guys in a green car." The state trial court precluded Moran's testimony as hearsay. However, the court stated that it would permit defense counsel to recall Gonzalez and ask him directly whether he made the statement to Moran; if Gonzalez denied making the statement, the defense would be permitted to elicit the statement from

---

1. The lengthy procedural history of this case, including this Court's decision in *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir.2001), holding that Zarvela's habeas petition was timely, is not relevant to the issues before us and will not be recited.

2. The District Court certified these issues for appeal.

3. The record also contains the spelling "Gonzolez."

Moran. Defense counsel did not recall Gonzalez.

Although Gonzalez was the only eyewitness to the shooting, another witness testified for the State that, minutes after hearing a gunshot, she arrived at the scene and saw Hill lying on the ground, with petitioner and Gonzalez standing in a group near Hill. According to the witness, petitioner said, "[n]obody better say anything," and then got into a car and left.

Petitioner testified that, at the time of the shooting, he and his girlfriend were at a nearby Chinese restaurant, and that he did not go to the crime scene and had not been involved in selling drugs. Petitioner's girlfriend testified that she was in a nearby apartment at the time of the shooting, although she had earlier told the police that, at the time of the shooting, she was in a grocery store. She also testified that petitioner was involved in selling drugs.

Finally, another witness, who lived at 364 Linden Street, testified for the defense that she heard the gunshots and saw a white man running from the scene, although she had earlier given a statement that she had not been home during the shooting.

Petitioner first claims that the state trial court's refusal to admit Moran's hearsay testimony was a constitutional error that deprived him of a fair trial. The state trial court rejected petitioner's argument that the testimony fell under the "excited utterance" exception to the hearsay rule.

The Appellate Division held that this claim was unpreserved for appellate review because of petitioner's failure to comply with New York's contemporaneous objection rule, and, in any event, was without merit. *See People v. Zarvela,* 211 A.D.2d 690, 690, 622 N.Y.S.2d 465, 1995 WL 39073 (1994). The District Court held, contrary to the Appellate Division, that petitioner's claim was properly preserved at trial. *See Zarvela v. Artuz,* No. 97-CV-2393 (JBW),

at 12-13 (E.D.N.Y. Aug. 27, 2003). Reviewing the record, we agree with the District Court that petitioner's counsel raised the "excited utterance" exception at trial.

On appeal, the State argues for the first time that petitioner's claim is procedurally barred because he did not properly alert the state courts to the federal nature of the claim. If petitioner did not properly present his claim to the state courts, we would be barred from granting him relief, because he has made no showing of cause or prejudice for such a default. However, we need not address the State's argument. *See Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) ("[I]n the habeas context, a procedural default ... is not a jurisdictional matter.... [It] is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." (citation and internal quotation marks omitted)). Even if we assume that no procedural bar exists, we agree with the District Court that the claim cannot succeed on the merits.

■ When a claim is adjudicated on the merits by the state courts, a federal court's habeas review considers whether the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Appellate Division found petitioner's claim to be unpreserved, and, in any event, without merit, and therefore reviewed the claim on the merits. *See Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir.2002) (holding that a claim was adjudicated on the merits where it was one of the remaining contentions that the Appellate Division stated were "without merit").

■ Petitioner argues that the state trial court's refusal to allow Moran's testimony about Gonzalez's statement uncon-

stitutionally deprived him of his right to present a defense and his right to a fair trial. The Constitution requires that criminal defendants be afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (internal quotation marks omitted). However, "[t]he power of courts to exclude evidence through the application of evidentiary rules that serve the interests of fairness and reliability is well-settled." *Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir.2003). Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner "can show that the error deprived [him] of a *fundamentally fair* trial." *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir.1988) (internal quotation marks omitted). Petitioner does not explicitly argue on appeal that the state trial court's ruling was an incorrect application of New York's evidentiary rules. He merely asserts, citing two New York cases, that Gonzalez's purported statement to Moran, "given moments after [Hill's shooting] had occurred, bore ample indicia of trustworthiness." Petitioner claims that the proffered testimony was probative and significant, and that he was therefore constitutionally entitled to present it.

■ The state trial court did not commit constitutional error in precluding Moran's hearsay testimony. First, petitioner has not shown that the court's ruling was contrary to New York's "excited utterance" exception to the hearsay rule. "An excited utterance is one made 'under the immediate and uncontrolled domination of the senses, and during the brief period when consideration of self-interest could not have been brought fully to bear by reasoned reflection.'" *People v. Vasquez*, 88 N.Y.2d 561, 579, 647 N.Y.S.2d 697, 670 N.E.2d 1328, 1336 (1996) (quoting *People v. Brown*, 70 N.Y.2d 513, 518, 522 N.Y.S.2d 837, 517 N.E.2d 515, 517 (1987)). The statement must have been made before the declarant had the opportunity to reflect on the shocking incident. *Id.* Although Moran testified that Gonzalez "ran" into her apartment, presumably immediately after Hill was shot, "the time for reflection is not measured in minutes or seconds, but rather is measured by facts." *Id.* (internal quotation marks omitted). The state trial court could reasonably have determined that Gonzalez's statement to Moran that "some white guys" shot Hill was not the product of the "immediate and uncontrolled domination of the senses," but was unreliable hearsay. Gonzalez had a motive to fabricate in talking to Moran; he explained on the witness stand that his similar statement to the police detective—that a white male, and not petitioner, had shot Hill—was motivated by fear of petitioner. Additionally, the fact that Gonzalez made his statement in response to questioning by Moran, while not precluding the excited utterance exception, is "one of the factors to be weighed in determining whether the surrounding circumstances demonstrate that the utterance was instinctive." *People v. Edwards*, 47 N.Y.2d 493, 499, 419 N.Y.S.2d 45, 392 N.E.2d 1229, 1232 (1979).

Furthermore, any error in precluding Moran's testimony was harmless. The trial court gave petitioner the opportunity to recall Gonzalez to the stand, confront him with his alleged statement to Moran, and then elicit testimony from Moran if Gonzalez denied making the statement. Petitioner declined this opportunity—perhaps because the jury already knew, from Gonzalez's own testimony, that Gonzalez initially told the police that a white male had shot Hill.

■ Petitioner's second claim is that the state trial court's jury instructions on reasonable doubt diminished the State's burden and thereby violated his constitutional right to a fair trial. The Appellate Division held that this claim was unpreserved

for appellate review, and, in any event, was without merit. *See People v. Zarvela,* No. 92–01387, at 1. The District Court correctly held that petitioner's claim was procedurally defaulted for lack of a contemporaneous objection, *see Zarvela v. Artuz,* No. 97–CV–2393, at 17, and petitioner has not attempted to show cause and prejudice for the default. In any event, reviewing the state trial court's instructions as a whole, *see Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), we hold that they correctly informed the jury that the State was required to prove each element of the charged crimes beyond a reasonable doubt.

### Conclusion

We have considered all of petitioner's arguments and have found each of them to be without merit. Accordingly, the judgment of the District Court is hereby AF-FIRMED.