SUMMARY ORDER
Petitioner-Appellant Rafael Almeyda was convicted, following a jury trial, of murder in the second degree and was sentenced to an indeterminate term of 15 years to life imprisonment. His conviction was affirmed on appeal. People v. Almeyda, 90 A.D.2d 693, 455 N.Y.S.2d 307 (App. Div.1982), leave to appeal denied, 58 N.Y.2d 690, 458 N.Y.S.2d 1029, 444 N.E.2d 1016 (1982). In 2004, he appeared before the New York State Parole Board (“the Board”) for a seventh time, seeking parole, which the Board unanimously denied. Following unsuccessful habeas petitions in the New York state courts, Almeyda sought federal habeas relief in the United States District Court for the Southern District of New York (Scheindlin, J.), which denied the petition but granted a Certificate of Appealability “as to when, and if, a Parole Board may consider an inmate’s silence in deciding whether to grant that inmate parole.” Almeyda v. Travis, 06-civ-3680, 2007 WL 1723719, at *4 *586 (S.D.N.Y. June 12, 2007). We find that we need not resolve this question, because on the facts of this case Almeyda has not shown a violation of clearly established federal law sufficient to warrant habeas relief.
Almeyda bases his claims on the following exchanges, which occurred during his parole hearing:
Q: You’re here for a reappearance. You’re presently serving fifteen to life for murder two. You went to trial. Do you have any appeals pending?
A: Yes, I do.
Q: We are taking minutes of this hearing. Anything that you say about the crime could be used in court in the appeals process. Therefore, if you do not wish to discuss the crime, we will not hold that against you. But you have discussed the crime in the past, right? A: Yes.
Q: Do you want to continue and discuss the crime or should I just read what’s in the record?
A: Not as long as it’s pending.
Q: So you don’t want to discuss the crime?
A: No.
The Board went on to note a few details of the crime, apparently based on the record: “[T]he record indicates that over a period of a few days, in your apartment, you battered your three-month old son to death. And there were also reports the baby suffered burns while in your custody.” A board member said, “I did read your last transcript and it really didn’t shed much light on, you know, what you admitted to and what you didn’t.” The Board and Almeyda then went on to discuss other issues, including his criminal history, activities in prison, and plans if released. At the conclusion of the hearing, the Board asked, “Is there anything else you want to tell us, Mr. Almeyda?” Al-meyda replied:
That crime situation, I constantly think about that and I wish it could have happened differently. I think there’s no words to describe the remorse and anguish that has taken place in it. But in return, I also try to take corrective measures here so to leave out of here a better individual and in turn give back to society, to live as a law-[a]biding citizen, so to speak, to live by the criteria of the law and that of the parole stipulations. Like I said, by being a peer educator I too must live by example and that’s including whatever criteria is requested of me. By saying and by doing otherwise, what kind of example do I set? And with that, that’s all I have to say.
After briefly considering these statements and the other evidence before it, the Board denied Almeyda’s request for parole. It noted his “positive institutional record,” but found that his “lack of insight into [his] crime, in which [he] w[as] charged with the care of [his] three month old son resulted in horrendous injuries to his body, resulting in his death, leads this panel to believe that [his] release would deprecate the serious nature of [the] crime.”
In October, 2004, Almeyda filed a pro se petition in New York Supreme Court, Albany County. In this petition, he alleged that his First Amendment rights had been violated because the Board had attempted to coerce him into confessing to intentional murder, and then held his silence against him when he declined to discuss the crime. On January 18, 2005, the New York State Supreme Court dismissed the petition, noting that the Board “may consider an inmate’s refusal to accept responsibility for the crime” and “is not required to reevaluate a claim of innocence once there has been a conviction ... and has the discretion to consider petitioner’s lack of insight and remorse as a factor in determining whether to grant parole.” The appellate *587 division affirmed the Supreme Court’s dismissal of Almeyda’s petition, finding, inter alia, that “Petitioner’s remaining contentions, including his claim that the Board improperly held against him his refusal to discuss the crime, have been reviewed and found to be without merit.” Almeyda v. Travis, 21 A.D.3d 1200, 800 N.Y.S.2d 856, 856 (App.Div.2005), leave to appeal denied, 6 N.Y.3d 703, 811 NY.S.2d 335, 844 N.E.2d 790 (2006).
We review the dismissal of a habeas petition de novo. See Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir.2006). A habeas petitioner bears the ultimate burden of proving a violation of his constitutional rights by a preponderance of the evidence. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir.1997).
Under the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), we may grant habeas relief only if a petitioner can show that the state court’s decision was “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). Clearly established Federal law “refers to the holdings, as opposed to the dicta, of [the Supreme] Court’s decisions as of the time of the relevant state-court decision.” Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is “contrary to” clearly established federal law “if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.” Id. at 413, 120 S.Ct. 1495. A state court decision is an “unreasonable application” of Court precedent if it correctly identifies the applicable principle but unreasonably applies it to the facts. Id. This means that the state court must have done more than simply applied the law incorrectly. Id. at 411, 120 S.Ct. 1495. The “unreasonable application” prong can also be met where a state court “unreasonably failto extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed.” Ken-naugh v. Miller, 289 F.3d 36, 45 (2d Cir.2002).
On these facts, denial of Almeyda’s petition was certainly not an unreasonable application of clearly established federal law. We have considered all of Almeyda’s claims, and find them to be meritless. Accordingly, we AFFIRM the decision of the District Court.